**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| FARHAD AZIMA, <br> 5921 Ward Parkway <br> Kansas City, Missouri 64113, <br><br> Plaintiff, <br><br> v. <br><br> RAK INVESTMENT AUTHORITY, <br> Sheikh Muhammad Bin Salem Road/E11 <br> Ras al-Khaimah, United Arab Emirates, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 1:16-cv-1948 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT**

Plaintiff Farhad Azima, by and through his undersigned counsel, files this Complaint against defendant RAK Investment Authority and alleges as follows:

**INTRODUCTION**

1.  This matter arises out of the wrongful and tortious conduct of Defendant and its agents relating to the theft, conversion and improper use of the electronic data of Plaintiff for the purpose of extorting money from Plaintiff and inflicting unfair competitive injury on Plaintiff. As a direct and proximate result of the actions and omissions of Defendant and its agents, Plaintiff has suffered, and is continuing to suffer, substantial injury for which Plaintiff seeks monetary and injunctive relief against Defendant.

**PARTIES**

2. Plaintiff Farhad Azima ("Mr. Azima" or "Plaintiff") is a U.S. citizen who resides in Kansas City, Missouri. He has various business interests in the United States.

3. Defendant RAK Investment Authority ("RAKIA" or "Defendant") is an investment entity with its principal place of business in the Emirate Ras al-Khaimah in the United Arab Emirates. RAKIA is involved in commercial and investment activity around the world, and RAKIA competes in several respects with businesses owned and operated by Mr. Azima and his business interests.

**JURIDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

5. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(b)(3) because a substantial part of the events or omissions giving rise to some or all of Plaintiff's claims occurred in this district and/or Defendant is subject to the Court's personal jurisdiction with respect to this case.

**FACTS**

6. In 2015, RAKIA asked Mr. Azima to assist RAKIA by mediating a dispute that existed between RAKIA and certain persons, including RAKIA's former chief executive officer. Mr. Azima agreed to assist RAKIA and, over the course of several months, met numerous times with RAKIA's representative and its counsel, Dechert LLP, in an effort to mediate a resolution of the dispute. Mr. Azima incurred significant time and expense in providing this assistance to RAKIA but has never been compensated or reimbursed by RAKIA as a mediator for his services or expenses.

7. Through Mr. Azima's efforts and assistance, RAKIA was able to reach a tentative settlement of the dispute with its former chief executive officer and the other persons involved in the dispute. Soon after, RAKIA and its counsel refused to continue with the settlement discussions. When the settlement discussions broke down, RAKIA and its agents, including its counsel, unfairly and without justification began to blame Mr. Azima for the lack of a settlement, despite the fact that Mr. Azima simply served as a mediator between the two sides.

8. After several intense discussions between Mr. Azima and RAKIA's representative and counsel, on or about July 23, 2016, RAKIA's counsel ominously threatened Mr. Azima that Mr. Azima would be "collateral damage" from actions RAKIA intended to take against its former chief executive officer. RAKIA's counsel refused Mr. Azima's request for notes that were taken at the July 23, 2016, meeting in which the threat was made against Mr. Azima.

9. After the termination of the settlement discussions, Mr. Azima learned that the computer systems used by the former chief executive officer of RAKIA had been hacked and his emails had been misappropriated without his consent or authorization.

10. Shortly after the July 23, 2016, threat by RAKIA's counsel, Mr. Azima also learned that computers in the United States used by Mr. Azima had been hacked and that a massive volume of emails and other electronic data of Mr. Azima and his business associates had been illegally misappropriated and stolen on or about August 7, 2016. On information and belief, the volume of electronic data that was hacked and stolen from Mr. Azima and his business associates was approximately 65 gigabytes (GB).

11. The nature and extent of the hacking and misappropriation strongly indicates that the person or persons who stole the electronic data were highly skilled technologically and employed sophisticated hacking methods.

12. On September 23, 2016, Mr. Azima's counsel in Washington, D.C. suddenly received an email from David Hughes of Dechert, LLP, RAKIA's counsel in London, England (hereinafter "Defendant's counsel"). Attached to the email from Defendant's counsel was a letter containing various exhibits.[1] In the letter, Defendant's counsel demanded that Mr. Azima pay $4,162,500 to RAKIA and an affiliate of RAKIA within seven (7) days. Defendant's counsel insisted that the payment should be made in U.S. dollars and should be deposited in a bank account titled "Dechert LLP USD Client A/c." Defendant's counsel based this demand on information that RAKIA had "recently obtained . . . via publically available internet sources." Defendant's counsel threatened that, if the payment was not received by the deadline, RAKIA would "issue court proceedings in London against Mr. Azima without further notice."

13. In his letter, Defendant's counsel included substantial and detailed information relating to Mr. Azima that Defendant's counsel asserted was derived from the "publically available internet sources." Additionally, Defendant's counsel attached to his letter copies of certain documents that he claimed had been obtained from the "publically available internet sources." Without knowing at this time whether any portions of such documents had been altered or manipulated by Defendant's counsel or others, a review of the attachments to Defendant's counsel's letter indicates that many of the documents appear to be copies of portions of the electronic data that had been hacked and misappropriated from Mr. Azima and his business associates on or about August 7, 2016. Based on the foregoing and other facts alleged herein, it appears highly likely that Defendant or someone acting for or on behalf of Defendant had been involved in the original hacking and misappropriation of the internal and confidential

---

[1] Given the inappropriate and improper nature of certain information in Defendant's counsel's letter, Mr. Azima has omitted the letter as an exhibit to the Complaint but will amend or supplement the Complaint with a copy of the letter if and when an appropriate sealing or protective order can be presented to and entered by the Court.

electronic data of Mr. Azima or, at a minimum, downloaded or directly accessed the information from the "publically available internet sources."

14. The documents attached to Defendant's counsel's letter include emails that are clearly confidential, and that are internal to Mr. Azima and his business associates, and could not be legitimately in the possession of any third party.

15. As an additional threat, Defendant's counsel stated in his September 23, 2016, letter that RAKIA "currently intends to seek advice from its US lawyers as to the possibility of raising its concerns about [Mr. Azima's alleged conduct] with the relevant US enforcement agency." This additional threat is or would be a violation of Rule 8.4(g) of the District of Columbia Bar's Rules of Professional Conduct, which deems it "professional misconduct" for an attorney to "[s]eek or threaten to seek criminal charges . . . solely to obtain an advantage in a civil matter." It is evident that, by making this threat, Defendant's counsel intended to coerce or influence Mr. Azima to transfer $4,162,500 to the bank account titled "Dechert LLP USD Client A/c" on or before September 30, 2016.

16. Mr. Azima's counsel subsequently received an additional copy of Defendant's counsel's demand and threat letter by an overnight service.

17. On September 28, 2016, Mr. Azima's counsel sent an email to Defendant's counsel asking to extend the arbitrarily imposed deadline in order to permit Mr. Azima sufficient time to review and respond to Defendant's letter until October 3, 2016, and requested that Defendant's counsel identify "the website(s) from which some of the materials you attach are located." In an email to Mr. Azima's counsel, on September 29, 2016, Defendant's counsel unreasonably and punitively rejected the extension request. With respect to the request for information regarding the electronic data on which Defendant's counsel based their September

23, 2016, demand and threat letter, which stated that the "[d]ocuments were obtained from a number of sites which included [two website links containing the word "torrent"]."[2] Defendant's counsel explained that he had been "advised [by some person] that these sites may contain viruses and should only be accessed with professional assistance."

18. Based on the September 23, 2016, demand and threat letter from Defendant's counsel, and the disclosure of two websites by Defendant on September 29, 2016, it is clear that portions of the electronic data that had been hacked and misappropriated from Mr. Azima and his business associates on or about August 7, 2016, had been downloaded or transferred to remote websites known as "BitTorrent" sites and related micro-sites. On information and belief, the emails and electronic data of RAKIA's former chief executive officer that had been hacked and misappropriated were also posted to the same type of websites.

19. On information and belief, BitTorrent sites are often used to provide a platform to download large files. These sites are sometimes referred to as the "Dark Web" as their content is not readily available to the public. It is commonly and widely known that BitTorrent sites often contain misappropriated files, such as pirated movies and other misappropriated data. It is also commonly known that the micro-sites associated with BitTorrent sites contain substantial malware and software viruses which could and would infect the computers and systems of anyone who accesses those sites.

20. On information and belief, stolen and misappropriated data is disaggregated across BitTorrent sites and related micro-sites, which makes it highly unlikely, if not impossible, for a legitimate business to know independently, and without involvement in the

---

[2] Given the harmful nature of these links, Mr. Azima has omitted the links from the Complaint but will amend or supplement the Complaint if and when an appropriate sealing or protective order can be presented to and entered by the Court.

misappropriation or without direction, that such data exist on websites or how to access such data.  In other words, the average computer user would have to be "tipped off" that the data is hidden on the BitTorrent site or related micro-sites and would need specific information to navigate the websites in order to access the data on those websites.

21. Any legitimate business that received notice and direction from a third-party regarding the existence of certain data on BitTorrent sites and related micro-sites would or should know that such data had been misappropriated or stolen.

22. On information and belief, there is no normal or proper reason for a legitimate business to access BitTorrent sites or related micro-sites.  In fact, most security software employed by legitimate businesses is designed to completely block users from accessing any BitTorrent sites or related micro-sites due to the security risk those sites pose.

23. On information and belief, any person or entity seeking to download data on a BitTorrent site or related micro-sites would need highly specialized software to download the data.

24. Following receipt of the letter from Defendant's counsel on September 23, 2016, an initial investigation has revealed that data on certain BitTorrent sites and related micro-sites, including the websites referenced by Defendant's counsel in his September 29, 2016 email, is, or was derived from, data that was hacked, stolen and misappropriated from Mr. Azima and his business associates on or about August 7, 2016, as alleged above.  Data on those sites include emails that are clearly confidential, and that are internal to Mr. Azima and his business associates, and could not be legitimately in the possession of any third party.  As with the attachments to the September 23, 2016, letter from Defendant's counsel, any person or entity on

the other side of a business dispute would recognize immediately that those emails should not be in the possession of any third party.

25. On information and belief, at least one of the websites that contains data hacked, stolen and misappropriated from Mr. Azima and his business associates is hosted on computer systems in Dubai, United Arab Emirates, and was obviously created to disparage and harm Mr. Azima.

26. As a direct and proximate result of the hacking and theft of the confidential and internal data of Mr. Azima and his business associates that occurred on or about August 7, 2016, as well as the allegations and threats made by RAKIA and its counsel, on September 23, 2016, relating to that stolen and misappropriated data, Mr. Azima has incurred and continues to incur costs and expenses investigating, analyzing and redressing the theft of the data. The theft of the data has also caused Mr. Azima to suffer various injuries and damages, including those resulting from the disruption of his business. The costs, expenses and damages that Mr. Azima has already incurred relating to and arising from the theft of data exceed one hundred thousand dollars ($100,000.00).

27. Based on the foregoing facts and circumstances, one or more of the following is true:

    a. RAKIA, directly or through its agents, caused computers located in the United States containing the confidential, internal data of Mr. Azima and his business associates to be hacked and such data to be stolen and misappropriated without Mr. Azima's consent or permission.

  b. RAKIA and its agents knew or should have known that the confidential, internal data of Mr. Azima and his business associates had been hacked and that such data had been stolen and misappropriated without Mr. Azima's consent or permission.

  c. RAKIA and its agents caused misappropriated and stolen data of Mr. Azima and his business associates to be posted to and maintained on BitTorrent websites and related micro-sites.

  d. RAKIA and its agents knew or should have known that misappropriated and stolen data of Mr. Azima and his business associates had been posted to and were being maintained on BitTorrent websites and related micro-sites.

  e. RAKIA and its agents accessed and/or downloaded misappropriated and stolen data of Mr. Azima and his business associates from BitTorrent websites and related micro-sites knowing that such data had been misappropriated and stolen from Mr. Azima and his business associates without their consent or permission.

  f. RAKIA and its agents, including Defendant's counsel, have knowingly, intentionally and deliberately used misappropriated and stolen data of Mr. Azima and his business associates to threaten, coerce and harm Mr. Azima personally and in his business.

### COUNT I
**(Violation of Computer Fraud And Abuse Act)**
**(18 U.S.C. § 1030, et seq.)**

28. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1-27, above.

29. RAKIA, directly and/or through its agents, knowingly and intentionally caused computers in the United States containing the internal and confidential electronic data of Mr. Azima to be accessed and damaged in violation of the Computer Fraud and

Abuse Act, 18 U.S.C. § 1030(a)(5), by, among other things, hacking into those computers for the purpose of stealing and misappropriating the internal and confidential electronic data of Mr. Azima.

30. At the time of the violation, the computers that contained the internal and confidential electronic data of Mr. Azima and that were accessed and damaged were used in, or affected, interstate commerce.

31. Mr. Azima was directly and proximately injured by the violation of 18 U.S.C. § 1030(a)(5), including incurring costs and expenses to identify, investigate, analyze and address the violation. As of the filing hereof, such costs and expenses far exceed the minimum requirement set forth 18 U.S.C. § 1030(c)(4)(a)(i)(I).

32. The actions of RAKIA have directly and proximately caused Mr. Azima to suffer substantial injury and legally cognizable damages in an amount to be determined at trial.

33. In addition, as a result of the past and continuing violations, Mr. Azima has suffered, and will likely continue to suffer, certain irreparable harm to his person, reputation and business.

## COUNT II
### (Aiding and Abetting A Violation of Computer Fraud And Abuse Act)
### (18 U.S.C. § 1030, et seq.)

34. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1-33, above.

35. RAKIA, directly and/or through its agents, knowingly and intentionally aided and abetted a person or persons to access and damage computers in the United States containing the internal and confidential electronic data of Mr. Azima in violation

of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5), by among other things, hacking into those computers for the purpose of stealing and misappropriating the internal and confidential electronic data of Mr. Azima.

36. At the time of the violation, the computers that contained the internal and confidential electronic data of Mr. Azima and that were accessed and damaged were used in, or affected, interstate commerce.

37. Mr. Azima was directly and proximately injured by the actions of RAKIA and/or its agents in aiding and abetting the violation of 18 U.S.C. § 1030(a)(5), including incurring costs and expenses to identify, investigate, analyze and address the violations. As of the filing hereof, such costs and expenses far exceed the minimum requirement set forth 18 U.S.C. § 1030(c)(4)(a)(i)(I).

38. The actions of RAKIA have directly and proximately caused Mr. Azima to suffer substantial injury and legally cognizable damages in an amount to be determined at trial.

39. In addition, as a result of the past and continuing violations, Mr. Azima has suffered, and will likely continue to suffer, certain irreparable harm to his person, reputation and business.

### COUNT III
### (Conversion)

40. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1-39, above.

41. RAKIA, directly and/or through its agents, knowingly and intentionally hacked, misappropriated, stole and/or improperly came into possession of the internal

and confidential electronic data of Mr. Azima and has exercised wrongful dominion and control over that data in violation of Mr. Azima's rights.

42. The tortious actions of RAKIA constitute the unlawful conversion of Mr. Azima's property.

43. RAKIA's tortious actions were taken and motivated by animus, ill-will and malice towards Mr. Azima and with the specific intent of harming Mr. Azima in his person and his business.

44. The tortious actions of RAKIA have directly and proximately caused Mr. Azima to suffer substantial injury and legally cognizable damages in an amount to be determined at trial.

45. In addition, as a result of the past and continuing tortious conduct by RAKIA, Mr. Azima has suffered, and will likely continue to suffer, certain irreparable harm to his person, reputation and business.

## COUNT IV
### (Aiding And Abetting Conversion)

46. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1-45, above.

47. RAKIA, directly and/or through its agents, knowingly and intentionally aided and abetted a person or persons to hack, misappropriate, steal and/or improperly came into possession of the internal and confidential electronic data of Mr. Azima and to exercise wrongful dominion and control over that data in violation of Mr. Azima's rights.

48. The tortious actions of RAKIA constitute the unlawful aiding and abetting of the conversion of Mr. Azima's property.

49. RAKIA's tortious actions were taken and motivated by animus, ill-will and malice towards Mr. Azima and with the specific intent of harming Mr. Azima in his person and his business.

50. The tortious actions of RAKIA have directly and proximately caused Mr. Azima to suffer substantial injury and legally cognizable damages in an amount to be determined at trial.

51. In addition, as a result of the past and continuing tortious conduct by RAKIA, Mr. Azima has suffered, and will likely continue to suffer, certain irreparable harm to his person, reputation and business.

## COUNT V
### (Unfair Competition And Extortion)

52. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1-51, above.

53. RAKIA, directly and/or through its agents, knowingly and intentionally engaged in improper and illegal conduct against Mr. Azima in order to gain an unfair advantage in business competition with Mr. Azima.

54. The actions of RAKIA and/or its agents included, without limitation, the use of threats and extortion in order to cause Mr. Azima to pay substantial amounts of money to RAKIA and/or its agents.

55. The tortious actions of RAKIA were taken and motivated by animus, ill-will and malice towards Mr. Azima and with the specific intent of harming Mr. Azima in his person and his business.

56. The tortious actions of RAKIA have directly and proximately caused Mr. Azima to suffer substantial injury and legally cognizable damages in an amount to be determined at trial.

57. In addition, as a result of the past and continuing tortious conduct by RAKIA, Mr. Azima has suffered, and will likely continue to suffer, certain irreparable harm to his person, reputation and business.

## **PRAYER FOR RELIEF**

On the basis of the foregoing, and such additional evidence as Plaintiff will present at trial, Plaintiff Farhad Azima requests the entry of judgment in his favor and against Defendant RAK Investment Authority on all counts of the Complaint and the award of the following relief:

1. All statutory and compensatory damages incurred by Plaintiff as a result of the violations of 18 U.S.C. § 1030, et seq., as alleged above, in an amount to be determined at trial.

2. Compensatory damages incurred by Plaintiff as a result of the actions of Defendant and its agents, in an amount to be determined at trial.

3. Punitive damages in an amount not less than Twenty Million Dollars ($20,000,000.00).

4. A mandatory injunction requiring Defendant and its agents to return to Plaintiff all electronic data and other property of Plaintiff that are in the possession, custody or control of Defendant and its agents.

5. A prohibitory injunction obligating Defendant and its agent to refrain in the future from misappropriating or otherwise accessing Plaintiff's internal and confidential electronic data or other property.

6. Pre-judgment and post-judgment interest in the amounts and at the rates provided by law.

7. The costs and expenses, including reasonable attorney's fees, incurred by Plaintiff in this action and as a result of the actions of Defendant and its agents alleged herein.

8. Such other and further relief as the Court deems just and proper.

Dated:  September 30, 2016                           Respectfully submitted,

    /s/ Kirby D. Behre
Kirby D. Behre (D.C. Bar # 398461)
Timothy O'Toole (D.C. Bar # 469800)
Charles F. McAleer (D.C. Bar # 388681)
Miller & Chevalier Chartered
900 16th Street, NW
Washington, D.C. 20006
Tel:    (202) 626-5800
Fax:    (202) 626-5801
Email: kbehre@milchev.com
Email: totoole@milchev.com
Email: cmcaleer@milchev.com