UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FARHAD AZIMA,<br><br>Plaintiff,<br><br>v.<br><br>RAK INVESTMENT AUTHORITY,<br><br>Defendant. | Case No. 1:16-CV-01948-KBJ |

MEMORANDUM OF LAW OF DEFENDANT RAK INVESTMENT AUTHORITY IN OPPOSITION TO MOTION FOR A PROTECTIVE ORDER

Linda C. Goldstein (*pro hac vice*)
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
linda.goldstein@dechert.com

D. Brett Kohlhofer (D.C. Bar No. 1022963)
DECHERT LLP
1900 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 261-3349
d.brett.kohlhofer@dechert.com

*Attorneys for Defendant RAK Investment Authority*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 2

ARGUMENT .......... 5

I. Fed. R. Civ. P. 26(c) Does Not Authorize the Court to Enter the Order Azima Seeks .......... 5

II. Even If the Court Could Enter the Requested Order, Azima Has Not Met His Burden for Such Overbroad Relief. .......... 8

III. If the Court Does Intend to Grant Some Relief, It Should Adopt the Alternative Order Proposed by RAKIA, Which Is More Tailored And Respects The Authority of the High Court of Justice To Govern Its Own Proceeding. .......... 12

CONCLUSION .......... 12

EXHIBIT INDEX .......... 14

## TABLE OF AUTHORITIES

**U.S. Court Rules**

Fed. R. Civ. P. 26(c) ........ *passim*

Fed. R. Civ. P. 65 ........ 8

**Supreme Court of England and Wales Rules**

Civil Procedure Rules, R. 5.4C ........ 11

Civil Procedure Rules, R. 39.2 ........ 10

Civil Procedure Rules, Practice Direction 1.2 ........ 10

Civil Procedure Rules, Practice Direction 1.11 ........ 10

**Cases**

*AF Holdings, LLC v. Does 1-1058*,
752 F.3d 990 (D.C. Cir. 2014) ........ 2

*Alexander v. F.B.I.*,
541 F. Supp. 2d 274 (D.D.C. 2008) ........ 6

*Bridge C.A.T. Scan Assocs. v. Technicare Corp.*,
710 F.2d 940 (2nd Cir. 1983) ........ 7

*Cabotage v. Ohio Hosp. for Psychiatry, LLC.*,
No. 2:11-CV-50, 2012 WL 3064116 (S.D. Ohio July 27, 2012) ........ 7

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ........ 6

*Church of Scientology Int'l v. Fishman*,
35 F.3d 570 (9th Cir. 1994) ........ 6

*Darui v. U.S. Dep't of State*,
798 F. Supp. 2d 32 (D.D.C. 2011) ........ 7

*Doe v. District of Columbia*,
697 F.2d 1115 (D.C. Cir. 1983) ........ 10

*Friends of the Earth v. United States Dep't of the Interior*,
236 F.R.D. 39 (D.D.C. 2006) ........ 9

*Grunfeder v. Heckler*,
748 F.2d 503 (9th Cir. 1984) ........ 11

*Hilton v. Guyot*,
159 U.S. 113 (1895) ........ 1

*Kirshner v. Uniden Corp. of Am.*,
842 F.2d 1074 (9th Cir. 1988) ........ 6

*Klayman v. Judicial Watch, Inc.*,
247 F.R.D. 19 (D.D.C. 2007).................................................................................... 9

*Malibu Media, LLC v. John Does 1-6*,
291 F.R.D. 191 (N.D. Ill. 2013)................................................................................ 2

*Morgan v. U.S. Dep't of Justice*,
923 F.2d 195 (D.C. Cir. 1991)................................................................................ 7, 8

*Nebraska Press Ass'n v. Stuart*,
427 U.S. 539 (1976)................................................................................................ 4

*Org. for a Better Austin v. Keefe*,
402 U.S. 415 (1971)................................................................................................ 8

*In re Rafferty*,
864 F.2d 151 (D.C. Cir. 1988)................................................................................ 1, 5

*Roadway Exp., Inc. v. Piper*,
447 U.S. 752 (1980)................................................................................................ 6

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984).................................................................................................. 8

*Shepherd v. ABC*,
62 F.3d 1469 (D.C. Cir.1995).................................................................................. 6

*Timberland Co. v. Sanchez*,
129 F.R.D. 382 (D.D.C. 1990)................................................................................11

## PRELIMINARY STATEMENT

Plaintiff Farhad Azima ("Azima") pretends that his motion, styled as a request for a protective order pursuant to Fed. R. Civ. P. 26(c), is necessary to give effect to the Court's previous order sealing a single 97-page exhibit. *See* ECF No. 23 at 3–4. To the contrary, Azima's motion seeks much broader relief that would restrict the ability of Defendant RAK Investment Authority ("RAKIA") to use or share 30 gigabytes of data that were not produced in discovery, but were (as Azima concedes), downloaded from the Internet. As the D.C. Circuit held nearly 30 years ago, Fed. R. Civ. P. 26(c) simply does not allow district courts to restrict a party's use of documents that were not obtained in discovery. *In re Rafferty*, 864 F.2d 151 (D.C. Cir. 1988).

The requested order is improper for another reason: it purports to make this Court the arbiter of whether and how RAKIA may use the downloaded data in a proceeding pending in the English High Court of Justice in London. The High Court has its own procedures for seeking *in camera* review of evidence, but in the six months that the English proceeding has been pending, Azima has not invoked them. Comity—"the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation"—counsels that this Court refrain from dictating what evidence the parties may submit to the English High Court, how they may submit it, and whether it is available to the public there. *Hilton v. Guyot*, 159 U.S. 113, 164 (1895).

Notwithstanding the substantial legal defects in Azima's motion, as a compromise, RAKIA has proposed an alternative form of order designed to maintain the *status quo* pending the determination of RAKIA's motion to dismiss Azima's claims. It would preserve RAKIA's ability to discuss the downloaded data with its counsel and consultants and any other person who already possesses the data. Moreover, the alternative form of order would not restrict RAKIA's

ability to use the downloaded data in the English High Court, but would let the English High Court resolve those questions. If any order is to be entered, it should be the more limited form of order that RAKIA already has offered to Azima as a compromise, *see* Ex. A, not the improper order submitted by Azima.

## FACTUAL BACKGROUND

The Complaint recounts that at some time after August 7, 2016 Azima learned that "approximately 65 gigabytes (GB)" of electronic data belonging to him and his business associates had been hacked. ECF No. 1 ¶ 10. He later learned that "portions" of the hacked data had been "transferred to remote websites known as 'BitTorrent' [Internet] sites." *Id.* ¶ 18.

"BitTorrent" is a technology that provides a means of sharing large quantities of data among multiple computer users. *See AF Holdings, LLC v. Does 1-1058,* 752 F.3d 990, 998 (D.C. Cir. 2014) (explaining BitTorrent technology in copyright infringement case); *see also* Hung Decl ¶¶ 12-17. "BitTorrent" index sites available on the Internet collect and provide a searchable database of small "torrent" files, which allow a downloader's computer to locate the data sought. Popular search engines such as Google provide links to such files when the user searches for the name of the desired file. ECF No. 13-12 at 10, 12, 28, 29 (showing torrent files listed when searching the term "Farhad Azima"). Mechanically, "torrent" files contain instructions for connecting to torrent "trackers." The torrent "tracker" directs a downloader's computers to other computers that already have particular pieces of the desired computer file, and facilitates the exchange of data among the computers. *See Malibu Media, LLC v. John Does 1-6,* 291 F.R.D. 191, 193 (N.D. Ill. 2013).

As explained in the accompanying Declaration of Jim Hung, a cyber-security expert, multiple BitTorrent indexing sites show that three sets of files associated with Azima became

available for download in August, 2016. Hung Decl. ¶¶ 18, 20, 24, 29, 36.[1] Those sets of files comprise 25.7 gigabytes, 4.4 gigabytes, and 10.3 megabytes of data, respectively, or a total of approximately 30 gigabytes. *Id.* ¶¶ 25, 30, 37. The BitTorrent indexing sites show that the first file has been downloaded 81 times, *id.* ¶ 24; the second file has been downloaded 65 times, *id.* ¶ 36; and the third file has been downloaded 46 times, *id.* ¶ 29.

Representatives of RAKIA are among those who downloaded the three BitTorrent files associated with Azima (the "Downloaded Files"). Information gleaned from the Downloaded Files is the source for RAKIA's claims against Azima in *Ras Al Khaimah Investment Authority v. Farhad Azima*, Claim Number HC-2016-002798, in the High Court of Justice, Chancery Division in London (the "High Court Action"). *See* ECF No. 13-9. RAKIA's "Particulars of Claim" in that case quotes documents from the Downloaded Files. *Id.* ¶¶ 8.4, 8.17. Since the High Court Action was brought on September 30, 2016, more than six months ago, Azima has not asked the High Court to hear the case "in private" or to restrict the High Court's dissemination of court documents, such as the "Particulars of Claim," to non-parties. Nor has he asked the High Court to restrict RAKIA's use or dissemination of that evidence, or any of the other Downloaded Files. Moreover, in this case, commenced by Azima on September 30, 2016, Azima has not previously asked the Court to restrict RAKIA's use or dissemination of the Downloaded Files, other than to ask the Court to remove one 97-page exhibit from the public docket. ECF No. 14.

Both this case and the High Court Action are still at a preliminary stage, and there has been no exchange of documents or other discovery in either of them. As of the submission of

---

[1] Contrary to Azima's claim that these files were found on the "Dark Web," ECF No. 23 at 6, the documents were found on the publicly available Internet. Hung Decl. ¶ 11.

this memorandum, RAKIA's motion to dismiss the Complaint in this case is scheduled to be argued in one week, on April 18, 2017. Azima seeks the extraordinary relief of his so-called "protective order" at this juncture, more than six months after he first brought this case, because "[a] reporter from the Associated Press has attempted to contact [him], regarding copies of Mr. Azima's hacked documents that the reporter indicated he had received from a source." Ex. B at 7. As it happens, that "source" was not RAKIA or its agents, although, since the Downloaded Files were obtained in August 2016, RAKIA has been free to use and disseminate them as it sees fit. Presumably because the First Amendment prohibition on seeking a prior restraint against the Associated Press is so well entrenched, *see Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 570 (1976), Azima did not seek to restrict the Associated Press's use or publication of any of the Downloaded Files. Instead, Azima's U.S. counsel contacted RAKIA's U.S. counsel asking RAKIA to agree to a so-called "protective order." *See* Ex. B at 7.

RAKIA objected to that request because Azima's proposed order was so broad it would have restricted RAKIA's ability to communicate with its counsel, consultants, and others already in possession of the Downloaded Files. Further, Azima's proposed order would have prohibited RAKIA from submitting any of the Downloaded Files to the High Court of Justice, where its action against Azima is pending. Over the course of several emails, RAKIA's counsel explained the many problems with Azima's various proposals, and proffered RAKIA's alternatives. And because the parties were not making meaningful progress by exchanging drafts, RAKIA's U.S. counsel offered to discuss the issues with Azima's U.S. counsel by telephone. *See* Ex. B at 3 ("I will be in the office today if you would like to discuss the markup."). But on March 28, without responding to the offer from RAKIA's counsel to discuss a proposed compromise, and without first engaging in the required telephone conference with the Court, ECF No. 12, General Order

and Guidelines for Civil Cases Before Judge Ketanji Brown Jackson, App'x, ¶ 4(b), Azima filed this motion "pursuant to Fed. R. Civ. P. 26(c) and the Court's inherent powers," ECF No. 23.

If granted, the proposed Order would prohibit RAKIA, its attorneys, and its consultants from sharing among the group any of the Downloaded Files, "including . . . copies, excerpts, or summaries." ECF No. 23-1 ¶ 1. This prohibition would apply even to persons who already have some or all of the Downloaded Files, such as the Associated Press reporter whose call purportedly triggered this motion. The proposed Order would also make this Court the arbiter of whether and when RAKIA may submit any of the Downloaded Files to the English court in the High Court Action against Azima. *See id.* ¶ 2 ("[T]he Party seeking to submit any Protected Documents to a foreign court must give the other Party to this case ten-days prior written notice of intent to submit any Protected Documents . . . and its counsel shall have the opportunity to oppose the submission of any Protected Documents to the foreign court[.]").

## ARGUMENT

### I. Fed. R. Civ. P. 26(c) Does Not Authorize the Court to Enter the Order Azima Seeks.

Azima does not even mention the seminal D.C. Circuit case holding that Rule 26(c) does not authorize district courts to prohibit the use or dissemination of documents that are not obtained in discovery. In *In re Rafferty,* the D.C. Circuit vacated a protective order that restricted a plaintiff's use of data that he had allegedly "hacked" from his former employer's computers before the litigation began. 864 F.2d 151, 155 (D.C. Cir. 1988). There, the defendant employer argued that the employee "must be prevented from disclosing [data] because [it was] obtained . . . improperly," *id.* at 155, but the plaintiff contended that he received the data innocently. *Id.* The D.C. Circuit explained that "while [the movants] were free to seek any legal or equitable relief available to them to remedy the alleged [theft] and to prevent [the data's]

disseminati[on]", "[w]hat [the movants] may not do . . . is use the happenstance of a discovery proceeding . . . to place under a protective order materials not obtained through discovery." *Id.* Other circuits that have considered the question are in accord. *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1076 (9th Cir. 1988) ("[T]he district court abused its discretion in issuing a protective order purporting to restrict the use of documents obtained in a separate action[.]"); *cf. Church of Scientology Int'l v. Fishman*, 35 F.3d 570 (9th Cir. 1994) ("[Because] Scientology has specifically represented to this court that it is not seeking an order preventing defendants from disseminating information which they obtained through means other than discovery . . . the district court had the authority to issue a protective order sealing or returning the disputed documents.").

Azima cannot avoid the limitations on this Court's authority under Fed. R. Civ. P. 26(c) by appealing in the alternative to the Court's "inherent powers." The Supreme Court admonishes that "because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion," *Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 764 (1980). Federal courts' inherent equitable authority exists to "to protect their integrity and prevent abuses of the judicial process.'" *Shepherd v. ABC,* 62 F.3d 1469, 1474 (D.C. Cir.1995) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46 (1991)). "[T]o [exercise] its inherent authority, the court must find some connection between [the order] and a process of the court in the litigation before it." *See Alexander v. F.B.I.,* 541 F. Supp. 2d 274, 303–04 (D.D.C. 2008) (denying motion for sanctions based on alleged misconduct "that does not bear on the Court's processes in this case"). "While this requirement that there be a connection to the pending litigation often is left unsaid (perhaps because of its obviousness), it is implied in various formulations of the inherent power." *Id.* at 309 n.51 (collecting authorities). Moreover, "First

Amendment considerations" mean that "the court generally has no . . . power to prohibit dissemination of the information itself, stripped of its judicial garb, if that information has been gathered independently of judicial processes." *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 946 (2nd Cir. 1983).

Consistent with this limited role, other courts have exercised their inherent authority with respect to documents obtained outside the discovery process only where the documents could be used unfairly *in the proceeding before the court*. *See, e.g., Cabotage v. Ohio Hosp. for Psychiatry, LLC.*, No. 2:11-CV-50, 2012 WL 3064116, at *3 (S.D. Ohio July 27, 2012) ("This Court does, however, possess the inherent authority to issue an order addressing Plaintiff's expressed intention to utilize the documents at issue in this case"). The order sought by Azima does not fall within the Court's inherent authority because it purports to govern RAKIA's actions outside of the case pending before this Court; indeed, it purports to govern RAKIA's actions in *other* courts in *other* countries.

The two cases cited by Azima do not address a court's authority to enjoin use or disclosure of documents obtained by a party prior to litigation. Those two cases, both decided under the Freedom of Information Act ("FOIA"), hold only that documents that have been filed under seal are not necessarily exempt from disclosure under FOIA. *Morgan v. U.S. Dep't of Justice*, 923 F.2d 195, 199 (D.C. Cir. 1991) ("[W]e hold that the mere existence of a court seal is, without more, insufficient to justify nondisclosure under the FOIA."); *Darui v. U.S. Dep't of State*, 798 F. Supp. 2d 32, 42 (D.D.C. 2011) ("There would be no such restrictions if the

government were to produce the documents pursuant to FOIA[.]").[2] They do not authorize the extraordinary relief that Azima seeks.

## II. Even If the Court Could Enter the Requested Order, Azima Has Not Met His Burden for Such Overbroad Relief.

The proposed Order seeks to "prohibit[] further dissemination, directly or indirectly, of any documents of or relating to Plaintiff and his business associates that Defendant and his counsel have downloaded from BitTorrent sites[.]" ECF No. 23 at 2. This restriction on the free flow of documents and information "gained through means independent of the court's processes," *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984), cannot be granted on the mere showing of "good cause" applicable to protective orders under Fed. R. Civ. P. 26(c). Rather, Azima could proceed only under the far more demanding standards of Fed. R. Civ. P. 65 and associated case law governing preliminary injunctions. If the Court finds that it is empowered to grant any relief to Azima, it should still decline to grant the proposed Order because Azima's motion does not begin to make the showing necessary for such relief.

Azima's attempt to stymie further dissemination of documents that are of interest to at least one "major news media outlet," ECF No. 23 at 4, amounts to a request for a court-ordered prior restraint. "Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). While such First Amendment concerns are not implicated with respect to documents obtained in discovery, they do apply where, as here, information has been obtained outside the discovery process. *See Seattle Times Co.*, 467 U.S. at 34 ("[J]udicial limitations on a party's

---

[2] Tellingly, Azima's selective quotation from *Morgan* excludes a key limitation on the Court's authority: "Fed. R. Civ. P. 26(c) . . . gives the court the discretion both to place documents in the court record under seal and to issue detailed protective orders prohibiting disclosure of documents obtained through discovery." *Morgan*, 923 F.2d at 197 n.2.

ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context.”).

Azima purports to have an interest in restricting “further dissemination,” ECF No. 23 at 2, of the Downloaded Files, but he acknowledges that at least some of the documents already are in the possession of the news media. And some of these have been quoted in detail in the “Particulars of Claim” that is available to the public in the High Court Action. *E.g.*, ECF No. 13-9 ¶¶ 8.4, 8.17. As RAKIA has explained previously, ECF No. 13-1 at 23, it found these documents on the Internet. In fact, a subsequent investigation by RAKIA’s consultants has revealed that as recently as April 10, 2017, many of the Dowloaded Files still can be downloaded by anyone with a computer. Hung Decl. ¶¶ 4, 31, 38. Yet, despite his heavy burden, Azima fails to explain how any order restricting RAKIA’s “further dissemination” of already public documents does him any good. He has not met his burden to “‘articulate specific facts to support [hi]s request’” and instead relies only on “‘conclusory statements.’” *Klayman v. Judicial Watch, Inc.*, 247 F.R.D. 19, 23 (D.D.C. 2007) (quoting *Friends of the Earth v. United States Dep’t of the Interior*, 236 F.R.D. 39, 41 (D.D.C. 2006)).

Even assuming, however, that Azima has a continuing privacy interest in the Downloaded Files, and that the protection of that privacy interest is sufficiently compelling for the Court to consider intervention, the proposed Order is far from the narrowly tailored approach that the First Amendment would require. Contrary to the suggestion in his motion, the proposed Order would go well beyond the single exhibit that the Court sealed previously, ECF No. 20. Rather, Azima seeks a bar that would apply to “any documents of or relating to Plaintiff and his

business associates that were downloaded to or obtained from BitTorrent sites." ECF No. 23-1 at 1. This amounts to some 30 gigabytes of data.

In addition, as Azima would have it, the proposed order would not stop at the mere reproduction of the Downloaded Files; rather, it also extends to "excerpts or summaries," ECF No. 23-1 at 2 ¶ 1, of the data that RAKIA or its counsel and consultants may wish to share among themselves, or provide to the Court, in preparation for this case and in the context of the High Court Action. This Circuit, however, strongly disfavors protective orders that would hinder the free flow of information between a client and its counsel. *See Doe v. District of Columbia,* 697 F.2d 1115, 1119 (D.C. Cir. 1983) ("District courts must be . . . chary of issuing protective orders that restrict the ability of counsel and client to consult with one another during trial or during the preparation therefor.").

Beyond the constitutional concerns, the proposed Order is also problematic because it would have this Court regulate confidentiality procedures to be applied in the High Court Action. In particular, the proposed Order would require that, before submitting any of the Downloaded Files to the High Court, RAKIA must give Azima a "ten-day prior written notice . . . so that [he] shall have the opportunity to oppose the submission," ECF No. 23-1 at 2 ¶ 2. This request ignores that the public availability of evidence in the High Court proceedings is an issue for the High Court to decide: the default rule in the High Court is that all hearings are public unless that Court rules otherwise. Supreme Court of England and Wales County Courts, Civil Procedure Rules ("CPR"), R. 39.2; CPR, Practice Direction 1.2.[3] When a hearing is considered "in public," "a non party may obtain a transcript of judgment on payment of [a] fee." CPR, Practice Direction 1.11. Further, the High Court's Civil Procedure Rules provide "[t]he general rule . . .

---

[3] *Available at* https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part39/pd_part39a#IDAAHXKC.

that a person who is not a party . . . may obtain from the court records of a copy of the statement of the case," CPR, R. 5.4C(1)[4]—*i.e.*, the pleadings, such as the Claimant's Particulars of Claim, *see* ECF No. 13-9, and the Defendant's Defence, *see* ECF No. 13-11.

In the reverse situation, this Court likely would not welcome an order by the High Court purporting to dictate what evidence could be submitted in these proceedings and whether that evidence was required to be filed under seal. The Motion does nothing to explain why, in the six months that the High Court Action has been pending, Azima's U.K. counsel has yet to move that Court for any sealing or confidentiality order. *See* CPR, R. 5.4C(4) ("The court may, on the application of a party . . . order that a non-party may not obtain a copy of the statement of the case [or] make such other order as it thinks fit.").[5] In analogous situations, this Court has recognized "its discretion to enjoin parties includes proceedings in a foreign country, but [has cautioned that] the power should be used sparingly." *Timberland Co. v. Sanchez*, 129 F.R.D. 382, 383 (D.D.C. 1990); *see also Grunfeder v. Heckler*, 748 F.2d 503, 509 (9th Cir. 1984) ("[C]onsiderations of courtesy and mutuality require our courts to construe domestic legislation in a way that minimizes interference with the purpose or effect of foreign law."). This Court should refrain from interfering with the High Court's management of the proceedings before that court, or the public access to those proceedings.

---

4 *Available at* https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part05.

5 As noted in RAKIA's memorandum in support of its motion to dismiss, when weighing a *forum non conveniens* motion, courts often consider the public interest of U.S. courts "avoiding unnecessary problems [in] the application of foreign law." ECF No. 13-1 at 19. The need to continually reference foreign legal procedures from the High Court Action in motion practice before this Court crystallizes those concerns, and underscores why Azima's claims would be more appropriately heard in the context of the pending High Court Action.

## III. If the Court Does Intend to Grant Some Relief, It Should Adopt the Alternative Order Proposed by RAKIA, Which Is More Tailored And Respects The Authority of the High Court of Justice To Govern Its Own Proceeding.

If the Court is inclined to grant some form of relief to Azima, it should grant the alternative order proposed by RAKIA, Ex. A. The alternative order proposed by RAKIA reflects a more reasoned approach for three reasons.

First, it makes clear that the order would not affect RAKIA's ability to submit relevant documents to the High Court of Justice in *Ras Al Khaimah Investment Authority v. Farhad Azima*, Claim Number HC-2016-002798, or any other action between Azima and RAKIA brought in a court outside the United States. But the alternative order also strikes a compromise because it provides that "if both Parties are not parties to th[e] foreign action, the Party submitting such documents to the foreign action shall provide written notice to the other Party[.]" Ex. A at 2 ¶ 2. Second, the alternative order would not preclude RAKIA from sharing copies, excerpts, or summaries of Downloaded Files with its attorneys or others who already have the documents. Finally, the alternative order proposed by RAKIA will cease to have any effect should the Court grant RAKIA's pending motion to dismiss, while Azima's proposed Order would continue absent further motion practice. *Compare* Ex. A. at 3 ¶ 4, *with* ECF No. 23-1 at 3 ¶ 4.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for a protective order. If the Court is inclined to grant some relief, it should grant the alternative order proposed by RAKIA, Ex. A—to which RAKIA would consent and which reflects an approach more consistent with the parties' rights and the Court's authority.

Dated: April 11, 2017

Respectfully submitted,

*/s/ Linda C. Goldstein*

Linda C. Goldstein (*pro hac vice*)
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
linda.goldstein@dechert.com

D. Brett Kohlhofer (D.C. Bar No. 1022963)
DECHERT LLP
1900 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 261-3349
d.brett.kohlhofer@dechert.com

*Attorneys for Defendant RAK Investment Authority*

## EXHIBIT INDEX

Alternative Protective Order Submitted By RAKIA ........................................................................ A

Communications Between Counsel Regarding Protective Order ..................................................B

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 11, 2017, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing to the following:

Kirby D. Behre (D.C. Bar No. 398461)
Timothy O'Toole (D.C. Bar No. 469800)
Charles F. McAleer (D.C. Bar No. 388681)
Ian A. Herbert (*pro hac vice*)
Miller & Chevalier Chartered
900 16th Street, N.W.
Washington, D.C. 20006
Tel: (202) 626-5800
Fax: (202) 626-5801
Email: kbehre@miclchev.com
Email: totoole@milchev.com
Email: cmcaleer@milchev.com
Email: iherbert@milchev.com

/s/ *D. Brett Kohlhofer*
D. Brett Kohlhofer (D.C. Bar No. 1022963)
DECHERT LLP
1900 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 261-3349
d.brett.kohlhofer@dechert.com

*Attorneys for Defendant RAK Investment Authority*