**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| FARHAD AZIMA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-cv-1948 (KBJ) |
| | ) | |
| RAK INVESTMENT AUTHORITY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

On March 30, 2018, this Court issued an opinion denying the motion to dismiss that Defendant RAK Investment Authority ("RAKIA") had filed in the instant matter—a case that involves claims by Plaintiff Farhad Azima that RAKIA "commissioned the repeated surreptitious hacking of his personal and business laptops from October 2015 to August 2016, and then published disparaging material that was illicitly gleaned from Azima's computers during the hacking." *Azima v. RAK Inv. Auth.*, 305 F. Supp. 3d 149, 154 (D.D.C. 2018). The Court's opinion addressed two arguments that RAKIA made in support of its motion to dismiss: (1) that this Court lacks subject-matter jurisdiction to entertain Azima's suit because RAKIA is entitled to sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1604, and (2) that Azima's suit should be dismissed under the doctrine of *forum non conveniens* in favor of litigating this case in London, England, because Azima and RAKIA had previously entered into a settlement agreement that contained a forum-selection clause designating London as the forum for any disputes over the contents of that settlement agreement.

*See id.* Ultimately, this Court rejected both arguments, concluding that it has subject-matter jurisdiction under the commercial activity exception to the FSIA, and that RAKIA's *forum non conveniens* argument was meritless, because RAKIA had not carried its heavy burden of establishing that London was, in fact, an adequate alternative forum to hear this case, nor had RAKIA demonstrated that the balance of public and private interests (including the settlement agreement upon which RAKIA relied) weighed in favor of having this case heard in London, *see id.*; *see also id.* at 173–76.

RAKIA has since filed an interlocutory appeal regarding this Court's FSIA determination, as it is clearly authorized to do under the collateral order doctrine. *See Agudas Chasidei Chabad of U.S. v. Russian Federation*, 528 F.3d 934, 939 (D.C. Cir. 2008). Apparently, RAKIA also wishes to appeal this Court's Order denying RAKIA's motion to dismiss for *forum non conveniens*, and to this end, before this Court at present is a motion that Rakia has filed to ask this Court to certify its *forum non conveniens* ruling for interlocutory appeal in accordance with section 1292(b) of Title 28 of the United States Code. (*See* Mem. of Law in Supp. of Def.'s Mot. for Certification of March 30, 2018 Order ("Def.'s Mem."), ECF No. 45-1, at 5.)[1]

In its Section 1292(b) motion, RAKIA has asked this Court to certify its prior *forum non conveniens* order for interlocutory appeal with respect to

> three controlling issues of law: (i) whether the Courts of England, where a
> parallel proceeding is already underway between the parties in the High
> Court of Justice (the "High Court"), is an adequate forum for Plaintiff's
> claims; (ii) whether the law of England offers an adequate legal remedy to

---

[1] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

Plaintiff; and (iii) whether a mandatory forum selection clause directs the parties to litigate this dispute in the High Court.

(Def.'s Mem. at 5.)  RAKIA contends that certification of this Court's ruling regarding these three pivotal *forum non conveniens* issues is appropriate "because [certification] meets each of the elements of [section] 1292(b), and is the most efficient path forward given the already-pending appeal." (*Id.* at 10.)  Thus, RAKIA maintains that this Court's ruling with respect to these issues and its ultimate conclusion about *forum non conveniens* raises "controlling question[s] of law" that permit a "substantial ground for difference of opinion[,]" and that the resolution of that question may "materially advance the ultimate termination of the litigation." (*Id.* at 9 (quoting 28 U.S.C. § 1292(b).)  *See also Van Cauwenberghe v. Biard*, 486 U.S. 517, 530 (1988) ("Section 1292(b) . . . provides an avenue for review of *forum non conveniens* determinations in appropriate cases.").  Azima opposes RAKIA's certification request, arguing primarily that the *forum non conveniens* issue presents no substantial ground for difference of opinion—as the standard for interlocutory review requires—and that, therefore, certifying the case for interlocutory appeal is improper at this point in time. (*See* Pl.'s Opp'n to Def. RAKIA's Mot. for Certification ("Pl.'s Opp'n"), ECF No. 46, at 6–13.)

Having considered the parties' arguments and the law surrounding section 1292(b) certification motions, this Court has concluded that RAKIA's section 1292(b) motion for certification must be **DENIED**.  In this Court's view, there is no substantial ground for difference of opinion regarding the controlling issues of law that RAKIA has identified with respect to *forum non conveniens* or this Court's ultimate conclusion that the complaint should not be dismissed on *forum non conveniens* grounds, which means that the legal standard for certifying the March 30, 2018 Order for interlocutory appeal

has not been met.  However, even in the absence of a certification from this Court,

RAKIA still has the option of petitioning the court of appeals to exercise its "pendent

jurisdiction" over the *forum non conveniens* issue in this case.  (*See* Part II, *infra*; *see*

*also* Def.'s Mem. at 8–9 (noting that RAKIA may make such a petition).)  A separate

Order consistent with this Memorandum Opinion will follow.

I.

Under section 1292(b) of Title 28 of the United States Code, a district court may

certify an order for interlocutory appeal when "(1) the order involves a controlling

question of law; (2) a substantial ground for difference of opinion concerning the ruling

exists; and (3) an immediate appeal would materially advance the litigation."  *APCC*

*Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 95 (D.D.C. 2003); *see also* 28

U.S.C. § 1292(b).  Notably, within this circuit, "a substantial ground for difference of

opinion" does not exist based solely on "[a] mere claim that the district court's ruling

was incorrect."  *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 104 (D.D.C. 2005)

(internal quotation marks and citation omitted).  Rather, the requisite grounds for

difference of opinion are "often established by a dearth of precedent within the

controlling jurisdiction and conflicting decisions in other circuits[,]" *APCC Servs.*, 297

F. Supp. 2d at 97–98 (citations omitted), or by "a split within this district on [the

disputed] issue[,]" *Nat'l Cmty. Reinvestment Coalition v. Accredited Home Lenders*

*Holding Co.*, 597 F. Supp. 2d 120, 122 (D.D.C. 2009).  *Cf. Chavez v. Occidental Chem.*

*Corp.*, 300 F. Supp. 3d 517, 538 (S.D.N.Y. 2018) ("A substantial ground for difference

of opinion exists when (1) there is conflicting authority on the issue, or (2) the issue is

particularly difficult and of first impression for the Second Circuit." (internal quotation

marks and citation omitted)).  Of course, a district court is not looking to other similar cases merely "to 'keep score' and determine which side has more decisions in its favor, but instead . . . to analyze the reasoning in those decisions and the 'strength of the arguments in opposition' in order to decide whether there is a substantial ground for dispute."  *Molock*, 2018 WL 2926162, at *3 (quoting *APCC Servs.*, 297 F. Supp. 2d at 98).

The party who seeks an interlocutory appeal under section 1292(b) must not only satisfy the certification elements in a technical sense; it also "bears the burden of showing that [such] exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment[,]" *Virtual Def. & Dev. Int'l, Inc. v. Republic of Moldova*, 133 F. Supp. 2d 9, 22 (D.D.C. 2001) (internal quotation marks and citation omitted), and interlocutory appeals are generally disfavored, given the "strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals," *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 20 (D.D.C. 2002) (internal quotation marks and citation omitted).  It is thus well established that section 1292(b) should "be applied in relatively few situations[.]" *Howard v. Office of the Chief Admin. Office of the U.S. House of Representatives*, 840 F. Supp. 2d 52, 55 (D.D.C. 2012) (internal quotation marks and citation omitted); *see also Kennedy v. District of Columbia*, 145 F. Supp. 3d 46, 51 (D.D.C. 2015) ("Interlocutory appeals are infrequently allowed[.]").

When a request for certification of issues for interlocutory appeal under section 1292(b) is presented, the district court must confirm that the moving party has satisfied

all of the elements of section 1292(b), and it must also conclude that certification is

appropriate as a discretionary matter. *See Molock v. Whole Foods Market Grp., Inc.*,

16-cv-2483, 2018 WL 2926162, at *1 (D.D.C. June 11, 2018); *see also Ahrenholz v. Bd.

of Trs. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000) ("Unless all [of section

1292(b)'s] criteria are satisfied, the district court may not and should not certify its

order . . . for an immediate appeal under section 1292(b)." (emphasis omitted)).

Moreover, despite the efficiency gains that can result from a well-timed interlocutory

appeal, the court must bear in mind that "the federal scheme does not provide for an

immediate appeal solely on the ground that such an appeal may advance the

proceedings in the district court." *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d

627, 631 (2d Cir. 1991) (citations omitted).

A.

In the instant case, this Court is satisfied that the issues that RAKIA has

identified—whether the courts of England are an adequate forum; whether the courts of

England offer an adequate legal remedy; and whether an allegedly mandatory forum-

selection clause requires the parties to litigate this dispute in England (Def.'s Mem. at

5)—constitute "controlling questions of law[.]" *APCC Servs.*, 297 F. Supp. 2d at 95–96

("Controlling questions of law include issues that would terminate an action if the

district court's order were reversed."); *see also EIG Energy Fund XIV, L.P. v. Petróleo

Brasileiro S.A.*, 246 F. Supp. 3d 52, 73–74 (D.D.C. 2017) (describing the evaluation of

an alternative forum's adequacy and the applicability of a forum-selection clause as

distinct analytic steps). Moreover, it appears that authorizing an interlocutory appeal of

this Court's *forum non conveniens* ruling could materially advance the disposition of

6

the litigation. *See Philipp v. Fed. Republic of Ger.*, 253 F. Supp. 3d 84, 88 (D.D.C. 2017) (making such a finding with respect to the requested interlocutory appeal of a *forum non conveniens* determination). Thus, the primary question at issue with respect to whether certification of this Court's Order under section 1292(b) is appropriate is whether there exists "a substantial ground for difference of opinion" as to this Court's resolution of RAKIA's motion for *forum non conveniens*. 28 U.S.C. § 1292(b)(2). This Court finds that there is no substantial ground for difference of opinion regarding the issues that RAKIA identifies, for the reasons explained below.

B.

With respect to the *forum non conveniens* question in the instant case, this Court's Memorandum Opinion, dated March 30, 2018, reached several conclusions that prevented it from granting RAKIA's motion to dismiss for *forum non conveniens*. First, it concluded that RAKIA had not carried its "heavy burden" of establishing that the United Kingdom constituted an adequate and alternative forum, because: (1) RAKIA was entitled to sovereign immunity in English courts and had been "careful to avoid making any representation that it would necessarily consent to the High Court's jurisdiction with respect to the claims that Azima makes in the instant case[,]" *Azima*, 305 F. Supp. 3d at 173, and (2) RAKIA had not "demonstrated that the United Kingdom offers an adequate remedy for the injuries Azima . . . complained of in this case[,]" *id.* at 174. Second, this Court concluded that, even if RAKIA had shown that England constituted an adequate alternative forum, it had failed to establish "that the balance of public and private factors has a strong tilt towards a particular forum[,]" in large part because this Court read a forum-selection clause in an unrelated settlement agreement

7

executed by the parties to be unequivocally inapplicable to the instant case, *id.* at 175–76 (internal quotation marks and citation omitted); therefore, there was no reason to disturb Azima's choice of forum, *see id.* at 176. Each of the above conclusions provided a sufficient ground for denying RAKIA's motion for *forum non conveniens*. And RAKIA's certification motion does not establish that there is a substantial ground for difference of opinion with respect to any of these aspects of this Court's *forum non conveniens* ruling.

Beginning with this Court's conclusion that RAKIA failed to demonstrate that English courts provide an adequate forum because RAKIA enjoys the prospect of sovereign immunity in the United Kingdom and has not yet waived its sovereign immunity with regard to Azima's pending claims, RAKIA has pointed to no case within this district or outside of it that would suggest that RAKIA would not in fact enjoy sovereign immunity within the English court system. Indeed, it acknowledges at every turn that RAKIA would presumptively enjoy sovereign immunity in that forum. (*See* Def.'s Mem. at 13; Reply Mem. in Further Supp. of Mot. for Certification of March 30, 2018 Order ("Def.'s Reply"), ECF No. 47, at 9.) RAKIA's tack is instead to contend that a substantial ground for a difference of opinion exists as to whether this Court "should have . . . granted the motion to dismiss on the express condition that [defendant] consent to the jurisdiction of the [foreign] court[]." (Def.'s Mem. at 13 (first and second alterations in original); *see also* Def.'s Reply at 9–10.) But here, again, RAKIA's section 1292(b) motion comes up short: while RAKIA has shown that other courts within this district and outside of this circuit *are willing* to dismiss a case on *forum non conveniens* grounds conditionally, it has not pointed to a single case

suggesting that a district court *must* conditionally dismiss a case, and, in fact, cases within this circuit clearly suggest that a district court need not do so. *See, e.g.*, *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 677 (D.C. Cir. 1996) ("[T]he district court *may* dismiss for *forum non conveniens* . . . conditioned on the defendants' submitting to jurisdiction in Jordan[.]" (emphasis added)), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010); *EIG Energy Fund XIV, LP*, 246 F. Supp. 3d at 76 ("[T]he court *could* dismiss the case contingent upon the satisfaction of certain conditions[.]" (emphasis added)). Thus, far from demonstrating that there is a substantial difference of opinion regarding whether or not this Court can refuse to dismiss a case conditionally on *forum non conveniens* grounds, past precedent clearly indicates that a district court's decision to grant a conditional *forum non covneniens* dismissal—or not—is entirely discretionary, and therefore, the Court's determination that RAKIA's sovereign immunity in the English High Court prevented (and, for the current moment, still prevents) England from serving as an alternative forum is not the stuff of which 'a substantial different of opinion' argument in support of section 1292(b) interlocutory review is made.

Similarly, this Court has found no substantial ground for a difference of opinion regarding whether this "Court held RAKIA to an unreasonably high burden to demonstrate the availability of an adequate legal remedy for alleged computer hacking under English law[,]" when it required more proof than Defendant's submission of portions of the U.K. Data Protection Act of 1998 and an opinion from the English High Court, *Gulati v. MGN Ltd* [2015] EWHC 1482. (Def.'s Mem. at 13–14.) There is certainly no dearth of precedent within the D.C. Circuit as to what sort of evidence a

defendant must produce to establish the existence of an adequate remedy in a suggested

alternative forum.  *See, e.g.*, *El-Fadl*, 75 F.3d at 677 ("To show the existence of an

adequate alternative forum, the defendant 'must provide enough information to enable

the District Court' to evaluate the alternative forum . . . [and] [t]he amount of

information that the defendant must provide, in supporting affidavits or other evidence,

depends on the facts of the individual case." (citation omitted)).  And based on this

Court's review, no case within the D.C. Circuit has ever held that a citation to an

inapposite foreign law and a foreign case that merely establishes that a tort action is

potentially available will satisfy the Defendant's heavy burden to establish the

adequacy of a forum.  *Compare MBI Grp., Inc. v. Credit Foncier du Cameroun*, 558 F.

Supp. 2d 21, 28 (D.D.C. 2008) (finding that the defendant had shown that Cameroon

provided an adequate remedy based in large part upon a Cameroonian law professor's

affidavits) *with Lans v. Adduci Mastriani & Schaumberg LLP*, 786 F. Supp. 2d 240, 293

(D.D.C. 2011) (concluding that the defendant's "unsubstantiated claim" and the lack of

"unequivocal" evidence precluded the court from finding that Sweden provided an

adequate remedy).[2]  Given these established precedents from this jurisdiction, this

Court finds that no substantial ground for a difference of opinion is present with respect

to whether this Court held RAKIA to an unfairly high burden with respect to the

requirement of demonstrating that England provides an adequate remedy for the claims

---

[2] It appears that RAKIA itself now concedes that the U.K. Data Protection Act of 1998, 1998, c. 29 (U.K.) does not provide Azima with a claim against RAKIA.  (*See* Def.'s Mem. at 14; Def.'s Reply at 7–9.)  And while RAKIA is correct that *Gulati v. MGN Ltd* [2015] EWCA  1291(Eng.) involved the tort of invasion of privacy (*see* Def.'s Mem. at 14–15), it is far from clear that Azima would have a right to bring that tort claim in the United Kingdom.  The *Gulati* case involved a situation where the defendant had admitted liability, *see Gulati*, EWCA 1291; moreover, RAKIA never demonstrated that English law regarding personal jurisdiction or venue would permit an American citizen to assert an English tort claim for activities that did not take place in the United Kingdom and that do not have any meaningful relation to the United Kingdom.

in this case.

Finally, this Court sees no substantial ground for a difference of opinion regarding its interpretation of the forum-selection clause in the settlement agreement that Azima and RAKIA reached in regard to a previous dispute. (*See* Def.'s Mem. at 16–17; Def.'s Reply at 10–11.) There exists a mountain of precedent within this district with respect to the interpretation of forum-selection clauses, *see, e.g.*, *Glycobiosciences, Inc. v. Innocutis Holdings, LLC*, 189 F. Supp. 3d 61, 67 (D.D.C. 2016), and this Court fails to perceive that that precedent establishes any difference of opinion regarding how the instant forum-selection clause should be interpreted, *see id.* ("The scope of a forum-selection clause is a matter of contract interpretation."). RAKIA has failed to point to a single case that interprets a similar clause in the context of a similar contract and comes to a different conclusion about whether the parties intended for a dispute of this nature to be litigated in a particular forum. And as noted, such disagreement among jurists is crucial to establishing a substantial difference of opinion for the purpose of section 1292(b); RAKIA's own rejection of this Court's interpretation of the instant contract (*see* Def.'s Mem. at 16–17) is insufficient to certify this issue for interlocutory appeal, *see Singh*, 383 F. Supp. 2d at 104; *Judicial Watch*, 233 F. Supp. 2d at 20.

In short, because RAKIA's certification motion provides no evidence of a circuit split, conflicting decisions among the judges in this district amidst a dearth of case law from the D.C. Circuit, or anything other than an attempt to revisit the previous, unsuccessful arguments that RAKIA has made with respect to the issues that RAKIA has identified regarding this Court's *forum non conveniens* ruling, there exists no

substantial ground for a difference of opinion, and this Court cannot certify RAKIA's motion under section 1292(b) of Title 28 of the United States Code.

II.

Notably, although this Court cannot grant RAKIA's motion to certify the *forum non conveniens* issue for interlocutory review under section 1292(b), the Court does acknowledge that it would be most efficient for the court of appeals to address both the foreign sovereign immunity issue and *forum non conveniens* question in one blow. (*See* Def.'s Mem. at 18.) As RAKIA has explained, "RAKIA is already pursuing an interlocutory appeal" with respect to this Court's FSIA ruling (Def.'s Reply at 5), and if section 1292(b)'s standards did not constrain this Court, it would readily agree to RAKIA's request for certification of the *forum non conveniens* issue as well.

Thus, this Court urges RAKIA to request that the D.C. Circuit exercise its "pendent appellate jurisdiction" over the *forum non conveniens* issue in this case. (Def.'s Mem. at 8–9.) To be sure, the D.C. Circuit "exercises pendent appellate jurisdiction sparingly[,]" *Gilda Marx, Inc. v. Wildwood Exercise, Inc.*, 85 F.3d 675, 678 (D.C. Cir. 1996), but it has indicated a willingness to do so when "pendent review will likely terminate the entire case, sparing both [it] and the district court from further proceedings and giving the parties a speedy resolution[,]" in the interest of "forestall[ing] a second appeal," *id.* at 679. This means that, "[c]onsiderations of fairness or efficiency may [] justify the exercise of pendent appellate jurisdiction[,]" *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1027 (D.C. Cir. 1997), and it appears that the D.C. Circuit has opted to exercise its pendent appellate jurisdiction in scenarios that are substantially similar to the instant case, *see, e.g.*, *id.* at

1025–27 (exercising pendent jurisdiction over threshold claims relating to whether or not the district court could exercise personal jurisdiction over the sovereign defendant where the defendant had already exercised its right to an interlocutory appeal "on the ground of sovereign immunity under the FSIA"); *see also Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725, 729 (D.C. Cir. 2008) (approving of pendent jurisdiction regarding select issues that accompany FSIA cases); *Rendall-Speranza v. Nassim*, 107 F.3d 913, 917 (D.C. Cir. 1997) (exercising its jurisdiction over a statute of limitations claim alongside an FSIA appeal).

III.

Be that as it may, for the foregoing reasons, and as set forth in the accompanying Order, RAKIA's motion for certification under section 1292(b) of Title 28 of the United States Code must be **DENIED**.

DATE:  September 7, 2018          *Ketanji Brown Jackson*
                                 KETANJI BROWN JACKSON
                                 United States District Judge